654 So.2d 371 (1995)
Robert J. HOOD, Jr., Plaintiff-Appellant,
v.
C.J. ROGERS, INC. and Insurance Company of North America, Defendants-Appellees.
No. 94-1162.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1995.
Order Amending Decree on Limited Grant of Rehearing May 15, 1995.
*373 Charles Henry Munsterman, Alexandria, for Robert Hood.
Russell Louis Sylvester, Natchitoches, for C.J. Rogers and Ins. Co. of North America.
Before DOUCET, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
In this worker's compensation appeal, Robert J. Hood, Jr. (Hood) presents three issues. First, Hood argues that the Office of Worker's Compensation (OWC) erred when it failed to award him attorney's fees and penalties for the defendants' allegedly arbitrary and capricious termination of his worker's compensation benefits. Second, Hood asserts that the OWC improperly cast him with one-half of the court costs. Third, Hood contends that the OWC should have awarded him expert witness fees. Hood's employer, C.J. Rogers, Inc., and its insurer, Insurance Company of North America (INA), answered Hood's appeal, arguing that the OWC improperly included sums paid to Hood for use of his truck and tools in the calculation of his average weekly wage. We affirm in part, reverse in part and render.
On February 21, 1994, Hood's claim for disputed compensation was heard in the OWC. At this administrative hearing, Hood sought permanent and total disability benefits, attorney's fees and penalties for INA's arbitrary and capricious termination of Hood's worker's compensation benefits, legal interest on back due compensation owed to Hood, all court costs, and expert witness fees. The hearing officer denied Hood's request for permanent and total disability benefits, attorney's fees and penalties, expert witness fees, and cast Hood with one-half of the court costs. The hearing officer found that: (1) Hood was entitled to supplemental earnings benefits (SEB); (2) Hood's average weekly wages should be amended to include the $350 fee paid to Hood for use of his truck and tools; and (3) Hood was entitled to legal interest on his back due worker's compensation benefits.

Facts
On June 17, 1991, Hood, a heavy equipment mechanic's helper, injured his back while picking up a heavy piece of earth-moving equipment known in the industry as a "hog-head." After an emergency room examination and x-rays at Highland Hospital in Shreveport, Hood was sent home. Prompted by continued pain in the four days following his accident, Hood sought treatment from Dr. Gordon Mead, Jr., an orthopaedic surgeon. Dr. Mead treated Hood from June 21, 1991, to September 4, 1991. Dr. Mead initially thought that Hood sustained an acute lumbosacral strain and sprain. However, after further diagnostic testing, Dr. Mead concluded that Hood suffered from a lumbar disc bulge.
On September 4, 1991, Dr. Mead completed a return to work order, evaluation sheet, *374 and a final medical report. As indicated in Dr. Mead's return to work order and evaluation sheet, he released Hood for light to medium duty work with permanent restrictions. He limited Hood's work activity to 3-5 hours per day with a 20 pound weight limit for any lifting, and a prohibition against repetitive lifting. Dr. Mead's final medical report also showed that Hood suffered from a permanent loss of function due to a lumbar disc bulge in the L4 and L5 region. He also opined that Hood had achieved maximum medical benefit and that his condition could not be improved with surgery.
After receiving Dr. Mead's return to work order, evaluation sheet and final medical report, INA terminated Hood's worker's compensation benefits without further investigation. Before termination of his worker's compensation benefits, Hood had received the maximum benefits, $282 per week, based upon an average weekly wage of $637.04.
Seeking reinstatement of his worker's compensation benefits and an examination by another physician, Hood obtained the assistance of counsel. After a period of lengthy negotiation, INA agreed to pay for a medical examination by Dr. J.C. Passman, an orthopaedic surgeon in Natchez, Mississippi. Dr. Passman referred Hood to Dr. John M. Patton, a neurosurgeon in Alexandria. Dr. Patton recommended further diagnostic testing which included a CT scan, MRI, and a myelogram. After viewing the results of these tests, Dr. Patton recommended surgery. On October 22, 1992, after receiving Dr. Patton's recommendation, INA reinstated Hood's worker's compensation benefits, but failed to pay legal interest on the 56 weeks of back due compensation owed to Hood from September 18, 1991 through October 21, 1992. On November 11, 1992, Dr. Patton performed surgery on Hood.

Court Costs and Expert Witness Fees
Awards of court costs and expert witness fees fall within the sound discretion of a hearing officer. LSA-C.C.P. Art. 1920; Cajun Elec. Power Coop. v. Owens-Corning Fiberglass Corp., 616 So.2d 645 (La.1993). However, while court costs may be properly cast against a losing litigant, it is generally an abuse of discretion to cast a largely successful worker's compensation claimant with court costs and to deny that claimant expert witness fees. Cook v. Dewey Rusk Flooring, 93-1643 (La.App. 3d Cir. 8/10/94), 642 So.2d 234.
The record shows that Hood successfully obtained SEB, an increase in his average weekly wage, and legal interest on the past due compensation owed him by the defendants. Although the hearing officer denied Hood's claim for permanent and total disability benefits and denied him penalties and attorney's fees, the outcome of Hood's claim for disputed compensation was largely successful. Under these circumstances, we find that the hearing officer abused her discretion when she cast Hood, a clearly successful litigant and a prevailing party, with one-half of the court costs. For the same reasons, we also find that the hearing officer abused her discretion when she denied Hood expert witness fees for Drs. Richard H. Galloway and John M. Patton, whose testimony contributed and certainly influenced the hearing officer's decision to award Hood SEB. Accordingly, we find that Hood is entitled to these expert witness fees.

Penalties and Attorney's Fees
Hood contends that INA acted arbitrarily and capriciously when it terminated his worker's compensation benefits based solely on Dr. Mead's medical report, evaluation sheet and return to work order, absent further investigation. We agree.
LSA-R.S. 23:1201(E) allows the OWC to assess a twelve percent penalty for nonpayment of worker's compensation benefits unless the employer or the insurer "reasonably controverted" the employee claimant's right to worker's compensation benefits. Under LSA-R.S. 23:1201.2, a worker's compensation claimant is entitled to reasonable attorney's fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause. The purpose for attorney's fees and penalties is to combat indifference by employers and insurers toward injured employees. Lutz v. Jefferson Parish School Bd., 503 So.2d 106 (La.App. 5th Cir.1987).
*375 If an insurer terminates an employee's worker's compensation benefits when the employee has a partial disability, the insurer may be assessed penalties and attorney's fees. Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977). If an insurer learns that an employee can only return to work with restrictions, it is incumbent upon the insurer to seek further evaluation of the employee's condition before completely terminating worker's compensation benefits. King v. Travelers Ins. Co., 553 So.2d 1072 (La.App. 3d Cir.1989), writ denied, 558 So.2d 570 (La.1990); Lutz, supra; Alexander v. Department of Culture, Recreation & Tourism, 410 So.2d 1286 (La.App. 3d Cir.1982). Generally, an insurer who terminates all of a partially disabled employee's worker's compensation benefits is simply not "justified." Lucas, 342 So.2d at 598. Therefore, if the medical evidence is clear and uncontradicted that the employee was at least partially disabled, then a termination of the employee's worker's compensation benefits is arbitrary and capricious. See Rachal v. Crown Store Equipment Co., 93-1602 (La. App. 3d Cir. 6/1/94), 640 So.2d 730. Additionally, when the medical evidence suggests permanent restrictions, permanent loss of function and an inability of an employee to return to his former employment, an insurer must investigate further to determine if that employee's benefits may be terminated or, alternatively, whether the employee is entitled to additional worker's compensation benefits as authorized by law. Ross v. St. Paul Fire & Marine Ins. Co., 556 So.2d 891 (La. App. 2d Cir.1990); Gobert v. Aetna Cas. & Sur. Co., 509 So.2d 544 (La.App. 3d Cir. 1987).
In the case sub judice, INA terminated Hood's worker's compensation benefits based solely upon the facts contained in the medical report, evaluation sheet, and return to work order submitted to them by Dr. Mead, without further investigation. As indicated by Dr. Mead's return to work order and evaluation sheet, Dr. Mead released Hood for light to medium duty work with permanent restrictions. Dr. Mead's permanent restrictions limited Hood's work activity to 3-5 hours per day with a 20 pound weight limit for any lifting, and a prohibition against repetitive lifting. Dr. Mead's final medical report showed that Hood suffered a permanent loss of function due to a lumbar disc bulge in the L4 and L5 region. The final medical report also stated that Hood had achieved maximum medical benefit and that his condition could not be improved with surgery. Based upon this medical evidence, INA could not have conclusively determined, absent further investigation, that Hood was not entitled to additional worker's compensation benefits, particularly SEB.
The record further shows that INA's own adjuster, Leroy Crisp, admitted that based upon the findings in Dr. Mead's final medical report, INA should have conducted further investigation before terminating Hood's worker's compensation benefits. As stated by Mr. Crisp: "With the restrictions that he's given ... I really don't think that he could return back to work with these restrictions... but ... what we have to do in a situation like this is to see if he's able to go back to work." When asked whether INA made any reasonable investigation efforts to see if Hood could return to work before it terminated Hood's benefits, Mr. Crisp answered: "I don't show any activities at all. The only thing I show is receiving that report, and he was released to return to work light duty." We recognize that this is exactly the type of caustic indifference on behalf of an insurer that warrants penalties and attorney's fees.
Accordingly, we find that the OWC committed manifest error when it denied Hood penalties and attorney's fees. Therefore, given these circumstances, we hold that Hood is entitled to the statutory penalties and reasonable attorney's fees pursuant to LSA-R.S. 23:1201(E) and LSA-R.S. 23:1201.2.
The factors used to calculate attorney's fees in worker's compensation cases are the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). The record shows that plaintiff's counsel aggressively advocated and protected the rights of his client. He actively *376 utilized tools of discovery, formulated an avenue for recovery, and thoroughly researched the law. He prepared and attended discovery depositions, including one deposition which required him to spend two days in Houston, Texas deposing INA's adjuster. He spent one day at trial. He spent time meeting with expert witnesses and his client. He also was responsible for Hood's reinstatement of compensation and INA's payment of fifty-six weeks of past due compensation. Plaintiff's counsel also wrote an effective appellate brief outlining the legal and factual issues. Plaintiff's counsel also submitted an uncontradicted affidavit showing that he devoted at least 75 hours preparing, negotiating, administering, researching, and traveling for Hood's worker's compensation claim. Counsel's representation of plaintiff was excellent, effective, and time consuming. Given these circumstances, we find that an award of $12,000 in attorney's fees is reasonable and appropriate. Moreover, we further award an additional $1,500 in attorney's fees for the time spent on this appeal.

Payments for Hood's Truck and Tools
In its answer to the appeal, INA contends that the OWC erred when it amended Hood's stipulated average weekly wage of $637.04 to include payments made to Hood by his employer for the use of his truck and tools. We agree. Hood failed to present any evidence showing that the payments made to him by his employer for use of his truck and tools were regularly made or even understood to be included as part of his wages. At best, the record reflects that Hood received only two isolated payments of $350 for use of his truck and tools. Notwithstanding this fact, we explicitly recognize the jurisprudential rule that payments received by an employee for use of his equipment or tools, absent evidence of a contrary agreement, are not generally included in the calculation of an employee's average weekly wage pursuant to LSA-R.S. 23:1021 et seq. See Malone & Johnson, 14 Louisiana Civil Law Treatise: Workers' Compensation § 327 (3d ed. 1994) (and cases cited therein). Thus, we find that the OWC erred when it amended Hood's stipulated average weekly wage of $637.04 to include the $350 payments made to Hood by his employer for the use of his truck and tools.

Decree
For the above and foregoing reasons, we hereby reverse, vacate, and set aside that portion of the Office of Worker's Compensation's judgment amending Hood's average weekly wage of $637.04 to include the $350 payments made to Hood by his employer for the use of his truck and tools. We further reverse, vacate, and set aside that portion of the Office of Worker's Compensation's judgment denying Hood penalties and attorney's fees, and reverse and set aside that portion of the Office of Worker's Compensation's judgment assessing Hood with one-half of the court costs and denying him expert witness fees. Accordingly,
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of ROBERT J. HOOD, JR. and against INSURANCE COMPANY OF NORTH AMERICA for the 12% penalties pursuant to LSA-R.S. 23:1201(E) on the amount of worker's compensation benefits owed to ROBERT J. HOOD, JR. for the period of September 18, 1991 through October 21, 1992.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of ROBERT J. HOOD, JR. and against INSURANCE COMPANY OF NORTH AMERICA for attorney's fees in the full sum of THIRTEEN THOUSAND FIVE HUNDRED AND NO/ 100 ($13,500) DOLLARS.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of ROBERT J. HOOD, JR. and against INSURANCE COMPANY OF NORTH AMERICA for all trial court costs and expert witness fees.
All costs of this appeal are assessed to the defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
*377 PER CURIAM.
Plaintiff, Robert J. Hood, Jr., filed a motion for clarification requesting legal interest on attorney's fees and penalties awarded by decree in our opinion issued on March 8, 1995. It is well settled that appellate courts have the power to correct their judgments without the necessity of granting a rehearing to do so. George v. Marcantel Feed Stores, Inc., 446 So.2d 345 (La.App. 3d Cir.1984).
In our decree, we inadvertently omitted legal interest on Hood's award for attorney's fees and penalties. Accordingly, we hereby amend and recast the decree with the following correction and clarification:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of ROBERT J. HOOD, JR. and against INSURANCE COMPANY OF NORTH AMERICA for legal interest on all penalties and attorney's fees awarded from the date of judicial demand until paid.
In all other respects, our original decree is affirmed.