711 So.2d 819 (1998)
Mable RIDEAUX, Plaintiff-Appellee,
v.
ST. LANDRY PARISH SCHOOL BOARD, Defendant-Appellant.
No. 97-1616.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1998.
*821 Jere Jay Bice, Lake Charles, for Mable Rideaux.
Adam Gerard Caswell, Eunice, for St. Landry Parish School Board.
Before THIBODEAUX, COOKS and AMY, JJ.
AMY, Judge.
The claimant, Mable Rideaux, was injured while in the course and scope of her employment with the St. Landry Parish School Board. This matter arose when the employer reduced her temporary and total disability benefits to supplemental earnings benefits after learning that her treating physician had approved two available jobs. Although this approval was later revoked, this claim arose after the employer did not reinstate the higher disability benefit rate. Following a hearing, the workers' compensation judge concluded that the claimant is totally and permanently disabled. Additionally, penalties and attorney's fees were awarded. The employer now appeals.

FACTUAL AND PROCEDURAL BACKGROUND
This matter arose when the claimant, Mable Rideaux, fell and injured her back in August 1992 while employed as a cafeteria worker with the defendant, the St. Landry Parish School Board (Board). Following this injury, the claimant was paid temporary and total disability benefits. Additionally, the Board provided Mrs. Rideaux with medical benefits for her back condition.
Mrs. Rideaux was primarily treated by Dr. Frank Anders, an orthopaedic surgeon, following the injury. The record indicates that the claimant was found to have a displaced intervertebral disc and underwent a laser lumbar discectomy. Following this surgery, Dr. Anders diagnosed her continuing back pain as further requiring a decompression laminectomy. However, Mrs. Rideaux, who repeatedly reported to Dr. Anders that she experienced both good and bad days with regard to pain, declined the surgery.
On April 19, 1995, Dr. Anders met with Denise Perry, the defendant's vocational rehabilitation counselor, at which time he approved two job positions for the claimant. One week later, however, on April 26, 1995, Dr. Anders retracted this approval. Also on April 26th and despite the retraction, the defendant reduced Mrs. Rideaux's compensation to supplemental earnings benefits, based on the previously approved positions. The record indicates that the temporary and total disability benefits were not reinstated after notification of Dr. Anders' findings.
Furthermore, while the claimant was receiving SEBs, the defendant sent Mrs. Rideaux to another orthopaedic surgeon, Dr. Gregory Gidman. Dr. Gidman had originally seen the claimant on September 20, 1994 at the request of F.A. Richard, the defendant's third-party claims administrator. At that time, Dr. Gidman felt that Mrs. Rideaux had reached maximum medical improvement, was in no need of formal therapy, and was limited to "sedentary activity with limited bending." She returned to Dr. Gidman on June 13, 1995 at the request of the defendants and after benefits had been reduced. At that time, Dr. Gidman found that she continued at maximum medical improvement, that she had a "10% impairment of the whole person," and that she could perform the two jobs approved by Dr. Anders. His report, however, made no mention that Dr. Anders had revoked his approval of these jobs. In the subsequent months, Dr. Gidman twice saw Mrs. Rideaux, once for a repeat examination and, on January 17, 1996, for a Functional Disability Evaluation. Dr. Gidman's reports following these visits were consistent with his earlier findings.
*822 Finally, on November 28, 1995, after benefits had been reduced, Mrs. Rideaux underwent an independent medical examination by Dr. Clark Gunderson, an orthopaedic surgeon. Dr. Gunderson indicated the following in his report of the examination:
It is my impression this patient is not at all interested in surgery. She has now been off work for over three years, and no matter what is done it is doubtful she is going to return to any type of significant gainful employment. This is based on statistics for work related injuries, and being off from work for greater than two years. At this point I do not believe there is any evidence to support a decompressive laminectomy. If the patient so desired, she could undergo investigative studies and a laminectomy if indicated, but she is adamant that she does not want any surgery. I personally doubt that she is going to be successful in returning to any kind of laboring activity because of apparent inability to perform activities of daily living and the fact that she has been off work for an extended period of time. If it is desired to measure her maximum potential for returning to gainful employment, I would recommend she again undergo a Functional Capacities Evaluation.
On February 9, 1996, Mrs. Rideaux filed a Disputed Claim for Compensation asserting the following:
Claimant is totally disabled as a decompressive laminectomy has been recommended by Claimant's treating physician. The employer has not provided any actual rehabilitation but rather only a labor market survey and reduced Claimant's benefits to SEB based upon positions which she can not physically and mentally perform. The employer has also refused to provide in-patient rehabilitation as recommended by Dr. Anders.
Following a hearing on the matter, the workers' compensation judge found that the claimant was totally and permanently disabled, thereby entitling her to past compensation. Additionally, the workers' compensation judge awarded both penalties and $25,000.00 in attorney's fees.
The defendant now appeals and asserts that the workers' compensation judge erred in finding the claimant totally and permanently disabled, finding that the claimant was entitled to penalties and attorney's fees, and in awarding attorney's fees in the sum of $25,000.00.

DISCUSSION

Total and Permanent Disability
The defendant first maintains that the workers' compensation judge erred in finding that Mrs. Rideaux is totally and permanently disabled. In particular, the defendant asserts that the finding of the workers' compensation judge was based on erroneous factual findings. For example, the workers' compensation judge stated in oral reasons for ruling that both Dr. Gidman and Dr. Gunderson recommended surgery when, in fact, neither did so. They also assert that the claimant's treating physician, Dr. Anders, never stated that the claimant was totally and permanently disabled.
The claimant responds to the defendant's assertions by arguing that the workers' compensation judge merely confused Dr. Gidman with Dr. Anders and, therefore, the judge correctly found that surgery had been recommended. Furthermore, the claimant asserts that the finding of a recommendation of surgery by Dr. Gunderson was not completely unsupported because he found that, if the claimant was interested in surgery, she could pursue further testing and evaluation.
Statutory authority for total and permanent disability is located at La.R.S. 23:1221(2) which provides, in part, as follows:
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.

*823 (b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or selfemployment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
In determining whether a claimant has met his or her burden of proving disability, a hearing officer must weigh all medical and lay testimony. Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132. Furthermore, in considering the evidence presented, the testimony of a claimant's treating physician should, ordinarily, be afforded more weight than a physician who merely conducts an examination. Stelly v. Guy Scroggins, Inc., 96-401 (La.App. 3 Cir. 10/9/96); 682 So.2d 782, writ denied, 96-3060 (La.2/7/97); 688 So.2d 503. Additionally, the opinion of a court-appointed independent medical examiner is to be treated as prima facie evidence. La.R.S. 23:1123; Fritz, 95-1705; 677 So.2d 1132.
This court has stated the following with regard to the standard of review to be applied on appeal in a situation regarding a finding of disability:
[T]he issue of disability is a factual determination. Creel v. Concordia Electric Co-operative, Inc., 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406, writ denied, 96-0577 (La.4/19/96); 671 So.2d 923. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. Comeaux, 657 So.2d 449. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officer's finding and that this finding is clearly wrong. Guidry v. Picadilly Cafeterias, Inc., 95-12 (La.App. 3 Cir. 5/24/95); 657 So.2d 325, writ denied, 95-1601 (La.9/29/95); 660 So.2d 870.
Fritz, 95-1705, p. 3-4; 677 So.2d at 1134.
In the present matter, the workers' compensation judge found that:
I findjudgment is that this woman is totally and permanently disabled. I find that Denise Perry says that the chances of re-employment are very difficult, and also Lynn (sic) Hebert testified that her chances of getting another job are very difficult, and I wrote down here that according to this witness she is totally and permanently disabled.
....
It has been testified that there is no labor market for a black female fifty-seven years old with third grade skills and a bad back. She definitely has a bad back. She has that L4/L5, I think Doctor Gidman says that she needs diskectomy and laminectomy, and Doctor Gunderson also recommends a surgery.
I also believe that the report of the assistant secretary offered into evidence together with Doctor Gunderson's report, that report is that this woman is totally and permanently disabled, and that the recommendation regarding the functional capacities evaluation was just for the purpose of deciding whether or not she could do anything at all, such as making a bed or working in her kitchen, and I think that thisthese two documents are proof that she is totally and permanently disabled, and they haven't been able to disprove it.

*824 After I got this I looked for some reports that would show that this report was disproved, but they gotthe Defendant got another report from Doctor Gidman, and it said the same thing. He said the same throughout, that she has an impairment of the lumbar spine and that she cannot do any heavy lifting or any repetitive bending. Therefore I findand then I also find that Doctor (sic) Glenn Hebert, vocational rehabilitation, said there was no labor market for the Plaintiff, that she would have to travel thirty-seven miles to work with the casino, that she cannot do housework, and I find that all the doctors, Gidman, Lorio, Doctor Anders, Doctor Cole, all found that this lady was disabled. None of them think she could go back to doing her regular work based on what I have seen, with the possible exception of Dr. Gidman.
We first note that the workers' compensation judge appears to have confused the findings of Dr. Gidman and Dr. Anders throughout her oral reasons for ruling. However, this appears to have been a mere confusion of the names, rather than a finding based on evidence not in the record as suggested by the defendant. For example, the workers' compensation judge notes that Dr. Gidman has found the claimant to be in need of surgery which, as previously stated, he did not find, but which was, in fact, the opinion of Dr. Anders. Despite the confusion regarding the physicians' names and opinions in the many medical reports offered into evidence, we conclude that the ultimate finding of the workers' compensation judge is supported by the record.
First, the plaintiff presented the reports of Dr. Anders, the claimant's treating physician. In the several years he treated Mrs. Rideaux, he consistently found her to be credible and forthright in her complaints of pain. He also consistently advised her of the availability of surgery as treatment for her back problems. Finally, although he had initially approved two positions shown to him by the defendant's vocational rehabilitation counselor, he had revoked his approval of these positions within a week. After he once again found her unable to work in April 1995, Dr. Anders' reports from Mrs. Rideaux's subsequent visits indicate that her condition continued to deteriorate, requiring various injections to relieve her pain, and resulting in additional findings from Dr. Anders that she was unable to return to work.
Dr. Anders' opinion regarding the claimant's inability to work was countered by that offered by Dr. Gidman. As previously stated, Dr. Gidman did not find that the claimant was in need of surgery and found her able to perform "light sedentary activities" on September 1, 1995. At that time, he approved the positions of restaurant hostess/cashier, garment inspector, and line prep and server for a restaurant. Later, in January 1996, Dr. Gidman performed a Functional Disability Evaluation on Mrs. Rideaux and concluded that she was "limited to somewhere between light and medium level activity." We do not find it manifestly erroneous for the workers' compensation judge to have given more weight to Dr. Anders' opinion than to Dr. Gidman's. As previously mentioned, a treating physician's testimony is generally given more weight than physicians who merely see a patient for evaluations. See Stelly, 96-401; 682 So.2d 782. Therefore, we find no manifest error in affording more weight to the opinion that Mrs. Rideaux is in need of surgery and unable to perform work.
Additionally, we do not find the opinion resulting from the independent medical evaluation particularly helpful in this matter. Dr. Gunderson indicated only that, due to the amount of time Mrs. Rideaux had been on disability, she was statistically unlikely to return to work and, further, that: "I personally doubt that she is going to be successful in returning to any kind of laboring activity because of apparent inability to perform activities of daily living and the fact that she has been off work for an extended period of time." Dr. Gunderson advised that a Functional Capacities Evaluation be performed to measure her "maximum potential for returning to gainful employment." With regard to surgery, he stated in his report that he "[did] not believe there is any evidence to support a decompressive laminectomy." He further stated that Mrs. Rideaux could undergo further testing should she want one, *825 but that she was "adamant" that she was not interested in surgery. Although our review of Dr. Gunderson's report does not support the workers' compensation judge's factual finding that this IME resulted in a finding that surgery is needed, we do not find that accepting this report as prima facie evidence requires a finding that the claimant can return to some type of employment. Rather, the report is equivocal and his findings regarding disability are based on subjective complaints and statistical evidence.
Our review of the record indicates that Dr. Anders and Dr. Gidman each provided consistent, although differing, reports regarding Mrs. Rideaux's condition and her ability, or lack thereof, to return to work. The remaining examining physicians offered no evidence so compelling as to require a finding contrary to that of the workers' compensation judge.
Finally, in addition to the opinion of the claimant's treating physician, the workers' compensation judge relied on the testimony of Glenn Hebert, an expert in the field of vocational rehabilitation. Hebert evaluated Mrs. Rideaux on January 29, 1997. In performing this evaluation, Hebert not only tested Mrs. Rideaux, but reviewed medical reports from the various doctors involved in the case. He testified that his testing revealed Mrs. Rideaux has a seventh grade education and that "[s]he is reading on a third grade level, spelling on a fifth grade level and doing math on a third grade level." When asked if he felt the claimant had a chance of being gainfully employed, Hebert responded as follows: "No, I don't, unfortunately, we just don't take people that are sixty years old with [a] low level of functioning, has had back surgeries and needs another one, back to work, we just don't help those type of people." Further, Hebert's report, which was entered into evidence, reveals the following opinion following his review of the matter:
A review of the functional capacity evaluation indicates that Ms. Rideaux can only lift 10 lbs. This would be considered sedentary work.
I reviewed the labor market survey which was done by the other rehabilitation counselor. The only two jobs which were approved by Dr. Andrus was the job at the Casino. The rehabilitation consultant indicated that these jobs were three miles from Ms. Rideaux's home. In fact, these jobs were actually thirty-seven miles from Ms. Rideaux's home.
Given the fact that Ms. Rideaux is restricted to sedentary work and is functioning at the third grade level, I feel there is no labor market for Ms. Rideaux.
I feel that providing Ms. Rideaux with any type of vocational rehabilitation services would be a waste of time and money since I do not know of anyone in Ms. Rideaux's geographical area who would tender her any type of employment.
From a vocational standpoint, I feel that even if Ms. Rideaux is able to do sedentary work, she will not be offered any type of employment.
From a vocational standpoint, I do not see Ms. Rideaux doing any type of substantial gainful activity for the remainder of her adult work life.
In light of this testimony regarding the available job market for Ms. Rideaux, along with Dr. Anders' findings, we conclude that the finding of total and permanent disability is supported by the record. Accordingly, the workers' compensation judge's determination is not manifestly erroneous.

Penalties
The defendant next argues that the workers' compensation judge incorrectly concluded that they were liable for penalties as a result of terminating Mrs. Rideaux's compensation. In support of their assertion that they acted reasonably, the defendant points out that Dr. Anders had approved two jobs for the claimant and that, after this approval was revoked, Mrs. Rideaux was sent back to Dr. Gidman who had consistently reported that she was able to return to work.
La.R.S. 23:1201 provides, in part, as follows:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars *826 per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner.
....
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
In reviewing the award for statutory penalties in this matter, we recognize that a worker's compensation judge is given great discretion in determining that penalties are due. Miller v. Byles Welding & Tractor Co., 96-164 (La.App. 3 Cir. 6/5/96); 676 So.2d 665. This discretion is not to be overturned unless it is clearly wrong. Id.
In this matter, the workers' compensation judge awarded both penalties and attorney's fees, and, in setting that award, the workers' compensation judge stated as follows in oral reasons for ruling:
Of course the accident has been proved and I find that the rate of compensation was a hundred and thirty-four dollars and ten cents. Now, that was reduced to twenty-eight dollars and twenty cents around April the 26th. I think the action of the F-a-r-a was egregious, I think it was done arbitrarily, capriciously and without justifiable cause. When they got the report from Doctor Anders that said that it could be reduced, they reduced it, but then when they got the report that said, no, put it back to what it was, instead of going back to Doctor Anders they went to Doctor Gidman, their own doctor, and got the report that they wanted.
Although not articulated as such, the workers' compensation judge apparently concluded that the issue of the claimant's disability was not "reasonably controverted." Based on the record before us, we do not find that the workers' compensation judge abused the great discretion afforded her in finding penalties appropriate in this matter.
The defendant's vocational rehabilitation counselor in this matter, Denise Perry, interviewed Mrs. Rideaux in February 1995. However, she did not perform any testing at that time. Despite a lack of testing to indicate whether Mrs. Rideaux was capable of performing these tasks, Perry met with Dr. Anders on April 19, 1995 and submitted four job descriptions for his approval. She stated that these jobs were available in the area, two of them at a local casino and that Dr. Anders approved one position as a "prep line cook" and one as a "hostess/cashier." She testified that she did not reveal to Dr. Anders that these jobs were over thirty miles from the claimant's home. Further, she affirmed that Mrs. Rideaux does not have any job experience working as a restaurant cashier and that the prep line cook position is more of a medium level, rather than a sedentary level, type of position. Perry reasserted, however, that this medium level position, which requires reaching and bending, was approved by Dr. Anders. She also affirmed that Dr. Anders had revoked his approval of these positions on April 26, 1995.
The record confirms that Mrs. Rideaux's total and temporary benefits were not reinstated after the defendant learned that Dr. Anders found the positions unsuitable. Rather, the claimant was sent back to Dr. Gidman who, in line with his previous findings that she had reached MMI and that she could perform at the sedentary level, found that she could perform the two positions originally approved by Dr. Anders.
Finally, although an IME was ultimately requested, this examination was not performed until November 1995 and, when performed, revealed only that Dr. Gunderson found that she was unlikely to return to work. As previously stated, this was apparently based on statistical information regarding the length of time she had been away from work and complaints regarding her "inability to perform activities of daily living...."
Eddie Petus, the adjuster handling Mrs. Rideaux's claim after suit was filed, testified that Mrs. Rideaux's benefits were terminated *827 due to Dr. Anders' approval of the two positions. However, after this approval was revoked, further rehabilitation testing was not performed and the higher benefits were not reinstated, even in the two-month interim between Dr. Anders' finding and Dr. Gidman's approval of the positions. Thus, only supplemental earnings benefits were paid during a period where no physician had approved any jobs.
Based on the lack of information available to the defendant after Dr. Anders revoked his approval of the available positions, and doubt as to whether Mrs. Rideaux would have been qualified to perform these positions, we conclude that the workers' compensation was not clearly wrong in finding that this matter was not reasonably controverted. Therefore, we find no error in the award of penalties.

Attorney's Fees
Finally, the defendant asserts that not only did the workers' compensation judge err in awarding attorney's fees, but, further, that the judge erred in setting the fees at an excessive rate.
La.R.S. 23:1201.2 allows for the imposition of attorney's fees if an employer's denial of benefits has been "arbitrary, capricious, or without probable cause[.]"[1] As with penalties, the workers' compensation judge is given great discretion in imposing attorney's fees. Miller, 96-164; 676 So.2d 665.
As stated above in our discussion of penalties, the workers' compensation judge found that the defendant acted "arbitrarily, capriciously and without justifiable cause." In particular, she noted that the defendant did not reinstate the claimant's full benefits after being alerted that Dr. Anders had revoked his approval of the jobs.
Our review of the evidence does not require a finding that the imposition of attorney's fees was clearly wrong. As previously stated, the record indicates that following Dr. Anders' finding that the claimant could not work and before the defendant even had Dr. Gidman's approval of the proposed job-descriptions, that Mrs. Rideaux was not returned to TTD benefits. Furthermore, these job-descriptions were submitted for both Dr. Anders' and Dr. Gidman's approval without any determination from the defendant of the claimant's work capabilities.
While we find that, in this matter, the imposition of attorney's fees was within the workers' compensation judge's discretion, La. R.S. 23:1201.2 permits the imposition of only "reasonable" attorney's fees. Furthermore, in awarding these fees in workers' compensation cases, the court must consider such factors as "the degree of skill and ability exercised, the amount of the claim, the amount recovered, and the amount of time devoted to the case." Hood v. C.J. Rogers, Inc., 94-1162, p. 7 (La.App. 3 Cir. 3/8/95); 654 So.2d 371, 375.
In this matter, the workers' compensation judge awarded $25,000.00 in attorney's fees and apparently awarded this amount, not due to the complexity of the case or the amount of work performed, but, due to her finding that the defendant had wrongfully reduced the claimant's benefits. In setting this amount, the workers' compensation judge stated as follows: "I would offerI'm going to award the judgment because I think it's so flagrant and so egregious as what they did, twenty-judgment of attorney fees for twenty-five thousand dollars."
The awarding of attorney's fees for arbitrary and capricious behavior in a workers' compensation case is, of course, a type of penalty. See Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97); 696 So.2d 1382. However, we conclude that the penalty for arbitrary and capricious behavior lies in the imposition of attorneys' fees rather than the amount of attorneys' fees to be assessed. Contra, Britton v. City of Natchitoches, 97-1038 (La.App. 3 Cir. 2/11/98); 707 So.2d 142. The amount of attorney's fees must be arrived at in accordance with law; i.e., La.R.S. 23:1201.2 requires that the fees awarded must be reasonable. The courts are *828 guided in this determination of reasonableness by previous jurisprudence. See Naquin v. Uniroyal, Inc. 405 So.2d 525 (La.1981); Gibson v. Dynamic Indus., Inc., 96-1605 (La.App. 3 Cir. 4/2/97); 692 So.2d 1320; Miller v. Roger Miller Sand, Inc., 95-1253 (La. App. 3 Cir. 3/13/96); 676 So.2d 1084; Hood, 94-1162; 654 So.2d 371. As we have stated above, the degree of skill involved, the amount recovered in the claim, and the amount of time spent during the representation are all considered in determining "reasonable" attorney's fees. Id.
In the case sub judice we do not find that the issues were so complex as to require unusual skill, nor does it appear that the matter required an extraordinary amount of time for preparation. Rather, the record indicates that a brief trial was held and that the case did not entail an extraordinary amount of motion practice. Accordingly, we find that the award of $25,000.00 is an abuse of discretion. Therefore, the judgment of the lower court awarding attorney's fees to the claimant is reduced and amended to the amount of $5,000.00.

Claimant's Assignments
In brief, the claimant asks this court for $2,500.00 in attorney's fees in defending this appeal. Additionally, the claimant's trial counsel requests penalties and attorney's fees for denial of medical treatment and that the court order medical treatments. Finally, the claimant's trial counsel asks for an increase in the amount awarded for the claimant's vocational rehabilitation expert.
We are precluded from reviewing the claimant's request for additional attorney's fees for defense of the matter on appeal, however, in the absence of an indication that a timely answer was filed in this regard. See La.Code Civ.P. art. 2133; Woolf & Magee v. Hughes, 95-863 (La.App. 3 Cir. 12/6/95); 666 So.2d 1128, writ denied, 96-0073 (La.3/15/96); 669 So.2d 427. We find no such answer and, therefore, do not address this assertion.
Further, although a timely answer was filed by claimant's trial counsel requesting the ordering of medical treatment, penalties and attorney's fees for refusal to provide medical treatment, and an increase in expert witness fees, these issues have not been briefed and, therefore, are deemed abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4. See also Miller v. Dupont, 97-267 (La.App. 3 Cir. 10/8/97); 702 So.2d 902; Eglin v. United Gas Pipeline, 95-721 (La.App. 3 Cir. 1/24/96); 670 So.2d 250.

DECREE
For the foregoing reasons, the decision of the Office of Workers' Compensation is affirmed, except as to the award of attorney's fees; and, accordingly, the award of attorney's fees is amended to reduce said award from $25,000.00 to $5,000.00. All costs of this appeal are to be assessed equally between the claimant, Mable Rideaux, and the defendant, St. Landry Parish School Board.
AFFIRMED IN PART; AMENDED IN PART, AND RENDERED.
THIBODEAUX, J., concurs and assigns written reasons.
COOKS, J., concurs.
THIBODEAUX, Judge, concurring.
I concur in the results reached. I agree with the author of this opinion on all issues, except the rationale underlying the award of attorney fees. I write separately to express my disagreement with the reasoning behind the imposition of attorney fees.
I agree that an award of attorney fees is a type of penalty. I disagree that the imposition and not the amount is the penalty. The function of a penalty is to deter unreasonable, illegal, or improper conduct by a party litigant or, as in this case, an employer. That purpose is negated if the penalty is insufficient to inhibit that conduct. Suppose, for example, an employer's conduct is arbitrary and capricious, or without probable cause and particularly egregious and an attorney has expended considerable time in obtaining a favorable result for an injured claimant. Would a nominal award serve as a penalty? Of course not.
Louisiana Revised Statute 23:1201.2 statutorily imposes an award of attorney fees. It specifically states that if the circumstances are appropriate, then the court should award *829 a reasonable attorney fee. The author of this opinion recognizes the imposition of a reasonable attorney fee and not simply an attorney fee. The penalty, in my view, is clearly in the amount of the fee. Whether that fact is reasonable depends on several factors. See Hood v. C.J. Rogers, Inc., 94-1162 (La.App. 3 Cir. 3/8/95), 654 So.2d 371; Rules of Professional Conduct Rule 1.5 (1987). Additionally, the amount of a reasonable fee is commensurate with the degree of the employer's or insurer's egregious or bad faith conduct. Britton v. City of Natchitoches, 97-1038 (La.App. 3 Cir. 2/11/98), 707 So.2d 142.
For the foregoing reasons, I respectfully concur.
NOTES
[1] We note that La.R.S. 23:1201.2 was amended in 1995 and changed the circumstances under which a claimant may recover attorney's fees. However, the "arbitrary, capricious, or without probable cause" language remains the same. Under either standard, we do not find that the workers' compensation judge erred in imposing attorney's fees.