729 So.2d 109 (1999)
Thomas WARD, Plaintiff-Appellee,
v.
PHOENIX OPERATING COMPANY, Defendant-Appellant.
No. 31,656-WCA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*110 Egan, Johnson, Stiltner & Patterson by Thomas D. Travis, Baton Rouge, Counsel for Appellant.
The Allison Law Firm by William T. Allison, Shreveport, Counsel for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, J.
The principal issue in this action is whether the workers' compensation judge ("WCJ") was clearly wrong in awarding the claimant, Thomas Ward ("Ward") penalties and attorney fees against defendants, Phoenix Operating Company ("Phoenix") and Louisiana Workers' Compensation Corporation ("LWCC"). For the following reasons, we amend the judgment of the Office of Workers' Compensation and we affirm as amended.

FACTS
Ward worked on a Phoenix drilling platform as a roustabout. He was injured while performing duties in the course and scope of his employment on June 4, 1996. LWCC provided the insurance coverage. Ward underwent an anterior cervical fusion in December 1996 as a result of this work-related accident.
On March 27, 1997, three months after his cervical fusion, Ward returned to his treating physician, Dr. Charles Gordon, a neurosurgeon, complaining of severe headaches and pain in his neck in the area of the surgery. On April 21, 1997, Dr. Gordon recommended that Ward undergo a CT scan of the brain and an EEG ("the procedures") to address the complaints of headaches and to rule out the possibility of seizures. Dr. Gordon made this request to Annette Robinson, the claims representative at LWCC managing Ward's claim.
After receiving the request from Dr. Gordon, Robinson noted that there had been no prior complaint by Ward of headaches in connection with this work-related accident. Robinson then found she had information in her file regarding Ward's previous treatment for migraine headaches, unrelated to this work-related accident. Robinson forwarded the migraine headache information to Dr. Gordon on April 24, 1997, and requested Dr. Gordon to review it to determine if he still felt that Ward's current complaint of headaches was due to his work-related injury.
Dr. Gordon's May 2, 1997 response to Robinson reaffirmed his belief that there was a connection between the work-related accident of June 4, 1996 and Ward's current complaint of headaches. On May 6, 1997, Robinson referred this matter to Professional Health Care ("PHC"), the Utilization Review Company used by LWCC. Dr. Byrum, a medical doctor employed by PHC, reviewed Ward's medical information and suggested that PHC and LWCC schedule Ward for a second medical opinion regarding the procedures.
Robinson never contacted Ward to inform him that the requested procedures were being reviewed by PHC. Instead, on April 23, 1997, Dr. Gordon's office informed Ward that *111 authorization for the procedures was being denied pending further investigation. Ward contacted Robinson's supervisor, Kathy Otts, on that same date, to find out why the procedures were being denied.
Ward was scheduled for a second medical opinion with Dr. Cavanaugh, a neurosurgeon, on May 27, 1997, which was rescheduled by Dr. Cavanaugh's office to June 12, 1997. Dr. Cavanaugh's second opinion also recommended Ward undergo the procedures. Robinson received this opinion on June 17, 1997, and she immediately forwarded it to PHC for their review. Robinson received approval for the procedures on July 1, 1997, in a telephone call from PHC.
Ward retained counsel to represent him in these proceedings on May 29, 1997. On June 3, 1997, his attorney sent a letter of representation to LWCC and on June 9, 1997, filed the disputed claim, solely contesting the failure of LWCC to provide medical benefits. Despite this notice of representation and of the disputed claim, no one from LWCC, including Robinson, contacted Ward or his attorney about Dr. Cavanaugh's report or PHC's approval until written notice was mailed on July 15, 1997, eighty-six days after Dr. Gordon made the initial request for authorization of the medical procedures.
A brief trial was held on March 12, 1998 on the issues of penalties and attorney fees, featuring only the testimony of Robinson. The WCJ ruled that LWCC and Phoenix failed to controvert Ward's right to timely receive services and arbitrarily and capriciously delayed authority for reasonable and necessary medical procedures. She awarded Ward $1,300 in penalties and $4,000 in attorney fees. Phoenix and LWCC appealed.

STANDARD OF REVIEW
In a worker's compensation case, as in other cases, the appellate court's review is governed by the "manifest error or clearly wrong standard." Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La. 1993). The hearing officer's factual findings are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Harrison v. Frank & Janie Seafood Restaurant, 30,845 (La.App.2d Cir.8/19/98), 718 So.2d 1003; Mitchell v. AT & T, 27,290 (La.App.2d Cir.8/28/95), 660 So.2d 204. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra.

DISCUSSION
By their first assignment of error, Phoenix and LWCC contend that the WCJ was clearly wrong in awarding penalties and attorney fees in this matter or, in the alternative, that the amount of penalties should be reduced. The WCJ is given great discretion in finding that penalties are due. This discretion will not be overturned unless it is clearly wrong. Harvey v. BE & K Construction, 30,825 (La.App.2d Cir.8/19/98), 716 So.2d 514; Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir.11/1/95), 663 So.2d 543; Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir.9/23/94), 643 So.2d 352. In the case of an injury compensable under the Workers Compensation Act, the employer is obligated to furnish necessary medical and surgical treatment. LSA-R.S. 23:1203(A); Nowlin v. Breck Construction Company, 30,622 (La.App.2d Cir.6/24/98), 715 So.2d 112; Spencer v. Gaylord Container Corp., 96-1230 (La.App. 1st Cir.3/27/97), 693 So.2d 818. The underlying reason for the worker's compensation provisions allowing the imposition of penalties and attorney fees for the arbitrary and capricious withholding of benefits is to combat the indifference by employers and insurers toward injured employees. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382; Clifton v. Rapides Regional Medical Center, 96,509 (La. App. 3rd Cir.10/9/96), 689 So.2d 471.
The WCJ found that Ward was entitled to penalties and attorney fees based on the LWCC's arbitrary and capricious failure to authorize, within 60 days, the medical procedures requested by the claimant's treating *112 physician. The WCJ gave the following reasons for assessing penalties and attorney fees against Phoenix and LWCC:
"I'm convinced that if they (PHC) had sent out written notification that would perhaps include the employee at best, they may or may not know the counsel, he would at least be able to notify his attorney and then the person that asked him to do the reviewif Ms. Robinson had received a letter on June 26th, she would have immediately handled it or she could make the local phone call to Dr. Gordon and say I'm watching this, here's my 60 days, my 60 days are up, what are you doing. Because she knows she's got 60 days to answer and it got taken out of her hands in relying on Professional Health Care Services.
Now by the fact that Ms. Robinson chose to rely on Professional Health Care Services and that caused her to run past the 60 days, I don't think I can say that that makes it outside of the employer/insurance company's hands. She hires them, she know the time deadlines, and she's got an obligation to make sure that they comply with her 60-day requirement.
So with the combination of things, given the nature of the care being sought, given the time delays and the reasons for the delays and the people that should have known or could have best known, failing to do what would have been a reasonable thing of sending out written notifications, then I think attorneys fees and penalties do attach."
The record supports the WCJ's finding that Phoenix and LWCC acted arbitrarily and capriciously in the unreasonable delay of the medical procedures for twenty-six (26) days. The imposition of penalties and attorney fees is governed by LSA-R.S. 23:1201(F)(2) that states in pertinent part:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calender day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calender day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
The defendants were properly assessed penalties for this arbitrary and capricious behavior in the amount of $1,300 (26 calendar days × $50/day).
Phoenix and LWCC further contend that because the claim had been sent to PHC for utilization review, it is unclear whether the time limits contained in LSA-R.S. 23:1201(E) and the penalties and attorney fee provisions contained in LSA-R.S. 23:1201(F) apply. This issue was addressed in Clifton, supra. In Clifton, the plaintiff was awarded attorney fees, pursuant to LSA-R.S. 23:1201(F), following the employer's misuse and abuse of the utilization review procedures. When there is a dispute over whether any treatment is necessary, a utilization review is conducted to determine the necessity of the requested treatment. LAC 40:12701A.1. Prior to the completion of the utilization review, the employee cannot file a claim against the employer for such services because the action is regarded as premature. Under this scheme, utilization review is the triggering event to medical treatment if medical treatment is found necessary. Clearly, if penalties and attorney fees are not available for the employer's arbitrary and capricious failure to timely provide the medical benefits recommended for the claimant's treatment, then an employer may take advantage of the utilization review to stall approval or deny the procedures indefinitely. To avoid this arbitrary and capricious behavior and to eliminate confusion regarding which time period applies, penalties and attorney fees can be awarded pursuant to LSA-R.S. 23:1201(F). Clifton, supra.
By their second and third assignments of error, Phoenix and LWCC urge that the WCJ was manifestly erroneous in considering factors outside of and in derogation of the Rules of Professional Conduct in making an attorney fee award in this matter and in the amount of attorney fees awarded. LSA-R.S. 23:1201(F) allows a reasonable attorney fee to be assessed for a disputed *113 claim. However, the WCJ has great discretion in the award of attorney fees and penalties and that decision will not be disturbed absent an abuse of that discretion. Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140; Stevens, supra, Graham, supra.
We find merit to the defendants' contentions. As noted above with regard to penalties, the WCJ found that Phoenix and LWCC failed to comply with the sixty-day time limit provided by LSA-R.S. 23:1201(E). The procedures were requested by Dr. Gordon on April 21, 1997 and were not approved until July 15, 1997, twenty-six days after the sixty-day time limit had expired.
However, LSA-R.S. 23:1201(F) permits only the imposition of a reasonable attorney fee. The factors to be considered in the imposition of the attorney fee in workers' compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered and the amount of time devoted to the case. Henton v. Walker & Wells Contractors, Inc., 25,821 (La.App.2d Cir.5/4/94), 637 So.2d 672; Hood v. C.J. Rogers, Inc., 94-1162 (La.App. 3rd Cir.3/8/95), 654 So.2d 371; Rideaux v. Saint Landry Parish School Board, 97-1616 (La.App. 3rd Cir.4/8/98), 711 So.2d 819.
In this matter, the WCJ awarded $4,000 in attorney fees, not based on the complexity of the case or time and effort expended by Ward's counsel, but instead as a punitive measure against the defendants for failing to communicate with Ward. In her assessment of the attorney fee, the WCJ gave the following reasons:
Given all of those factors and particularly in light of the fact that it is a medical issue and a health care issue only, and I will emphasis (sic) this through equity. Health care is essential. It is the employer's obligation, the statute is mandatory, it shall be provided. To delay it and then later consent to it without this employee being provided any more communication or assurances that he will be taken care of is wrong and that degree of culpability mandates that I assess a higher attorney fee than based solely on the fact that this is a thin file and got resolved very quickly.
The award of attorney fees is a type of penalty in workers' compensation matters. Sharbono, supra. However, the penalty for the behavior is the imposition of the attorney fee, rather than the amount of the attorney fee. The amount of the fee must be assessed in accordance with law, i.e., the fee must be reasonable. Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981); Rideaux, supra. Thus, the court must assess the degree of skill involved and the amount of time counsel spent representing the claimant to arrive at a reasonable attorney fee.
In the present case, we do not find that the issues were so complex as to necessitate an unusual amount of skill, or that there was an unusual amount of preparation required. The record reflects that there was no motion practice undertaken, little discovery and no depositions taken. There was a brief trial in which Ward's counsel put on no witnesses and entered only two exhibits. Thus, we find that the attorney fee award in the amount of $4,000 was an abuse of discretion. We further find that $2,500 is a reasonable award of attorney fees under the circumstances of this case. Therefore, the attorney fee award is reduced and that part of the judgment will be amended to reflect an award of attorney fees in the amount of $2,500.00.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation awarding the claimant, Thomas Ward, penalties and attorney fees is affirmed. The judgment is hereby amended to reduce the attorney fee award from $4,000 to $2,500. Costs of this appeal are assessed to the defendants, Phoenix Operating Company and Louisiana Workers' Compensation Corporation.
AMENDED AND, AS AMENDED, AFFIRMED.