772 So.2d 949 (2000)
Jeffrey W. HARVEY, Plaintiff-Appellee,
v.
BE&K CONSTRUCTION CO., Defendant-Appellant.
No. 34,057-WCA.
Court of Appeal of Louisiana, Second Circuit.
November 15, 2000.
Rehearing Denied November 30, 2000.
*950 Street & Street Law Firm by C. Daniel Street, Monroe, Counsel for Appellee.
Breaud & Lemoine Law Firm by Andrew H. Meyers, Lafayette, Counsel for Appellant.
Before BROWN, PEATROSS & DREW, JJ.
DREW, J.
BE&K Construction Company (BEK) appeals from a judgment of the Office of Workers' Compensation (OWC) awarding the claimant, Jeffrey Harvey, $4,000 in penalties and $16,000 in attorney fees under La. R.S. 23:1201 F. For the following reasons, we amend the judgment of the OWC and affirm.

FACTS AND PROCEDURAL BACKGROUND
Mr. Harvey's compensation case has been before this court twice previously. On March 23, 1994, while working as a boiler maker for BEK at a job in Virginia, claimant Jeffrey Harvey seriously injured his right knee. In June 1994, Dr. Frank X. Cline performed arthroscopic surgery on Mr. Harvey's knee but the knee continued to be unstable. BEK paid Virginia workers' compensation benefits to the claimant for a time, and Mr. Harvey then sought Louisiana workers' compensation benefits.
In Harvey v. B E & K Construction, 30,825 (La.App.2d Cir.8/19/98), 716 So.2d 514 (Harvey I), this court affirmed an award for benefits along with an award of penalties and attorney fees against BEK for the company's failure to timely provide Mr. Harvey with medical treatment at the time of his initial injury in Virginia. In Harvey v. B E & K Construction, 33,475 (La.App.2d Cir.8/23/00), 770 So.2d 819 (Harvey II), this court amended and affirmed an award of attorney fees against BEK for the company's failure to timely pay supplemental earnings benefits. On rehearing this court affirmed the original judgment of the OWC and awarded additional attorney's fees for work on the appeal. The instant dispute (Harvey III) *951 centers on BEK's handling of two recommendations that Mr. Harvey undergo a second arthroscopic surgery on his knee.

9/2/97 Surgery Recommendation
On March 2, 1995, Harvey saw Dr. Richard Ballard at the Green Clinic in Ruston. On that date, Dr. Ballard diagnosed Harvey with posttraumatic tendinitis; his report specifies that "I really do not at this point think that an arthroscopy is necessary. I think that we should just try some protection, strengthening, and anti-inflammatory medicine." At Harvey's next visit with Dr. Ballard, May 15, 1995, Dr. Ballard released Harvey to return to work but recommended that Harvey continue physical therapy for a month. On October 19, 1995, Dr. Ballard again saw Harvey for complaints of aching, swelling and grinding in the knee; the doctor opined that Harvey would suffer some of these symptoms permanently, but the report makes no mention of arthroscopic surgery or other surgical treatment.
Harvey next saw Dr. Ballard on September 2, 1997. Harvey complained that his knee ached virtually all of the time and continued to swell, and reported that these problems limited his activity. The "plan" section of Dr. Ballard's report states:
I think that we need to carry out an arthroscopy to determine the extent of any intraarticular pathology and hopefully can correct this if it is present. I will make arrangements for this to be done as soon as possible at Lincoln General Hospital.
Crawford and Company (Crawford) managed BEK's compensation claims. Lisa Spann, a Crawford senior vocational consultant, testified that she worked with worker's compensation claimants assisting them with doctors' appointments and finding employment. Spann stated that she received Harvey's file on October 21, 1998. She wrote Dr. Ballard on October 29, 1998, to obtain Harvey's current medical status, but got no response. Spann testified that she contacted Dr. Ballard's office on November 9, 1998 to check on the status of Mr. Harvey's condition. Ms. Spann testified that in response, Dr. Ballard's assistant sent her a progress note from September 4, 1998 stating that "Mr. Harvey had undergone an arthroscopy to remove scar tissue from the medial capsular area." We do not find this note in the appellate record or in the exhibits.
At this point in the record, some confusion arises concerning Dr. Ballard's records. Apparently, Dr. Ballard was treating two patients named Jeffrey Harvey, and, moreover, both Jeffrey Harveys suffered from knee ailments. Up until the September 2, 1997 report, the claimant's medical records included in this record bore the number "071260," presumably the claimant's patient number. One copy of the September 2, 1997 report recommending surgery bears no patient number, but another copy of the report has that number, along with several other notes identifying the patient as the claimant, at the top of the page. Handwritten progress notes from the Green Clinic, also dated September 2, 1997, bear the claimant's patient number, but these notes contain no mention of surgery.
At the hearing on this matter, Harvey testified that he wanted to, but did not, have the surgery in 1997. There is no evidence that the claimant or his attorney either took steps to notify the employer of the doctor's recommendation, or made any specific request for surgery. The doctor's records do not demonstrate that the doctor followed through with his promise to "make arrangements for this to be done as soon as possible at Lincoln General Hospital." There is a document styled a "workman's compensation patient authorization form" from Dr. Ballard's office that bears a notation: "9/29. Spoke to Judy Garcia & gave her info. She will check and call me back." There is no indication on the form whether the "9/29" date is in 1997 or in 1999.
*952 Judy Garcia was the Crawford adjuster responsible for Harvey's case and for deciding whether to approve the surgery. She said that she became the adjuster on Harvey's case on January 22, 1998. She testified that generally when her office receives a surgery recommendation.
Usually the doctor's office will call our office and then verification will be made or denied, whichever. If it's denied, we do it in writing.
Garcia testified there were neither requests for surgery, nor denials of surgery in Mr. Harvey's file in 1997. Garcia explained that the "9/29" note could not have referred in 1997, since she did not get the file until 1998.
No later than December 1998, Spann became aware that Dr. Ballard was treating two Jeffrey Harveys; in that month, Dr. Ballard's assistant sent a copy of both patient files with the notation "Here is all the info I have on both Jeff Harveys. I hope it helps. I hope you can decipher my notes." Spann also acknowledged that in December 1998 she knew that the doctor had recommended surgery for Harvey on September 2, 1997. She further stated that she forwarded all medical information to Garcia, the adjustor. After learning of the confusion about the two Jeffrey Harveys, Spann stated that her action was to notify the attorney then handling the Harvey litigation.
Garcia said that in February and March 1999, she placed several calls to Dr. Ballard's office to try to clear up the confusion about which Jeffrey Harvey had surgery but evidently these calls did not reveal the pertinent information. Thereafter, Ms. Garcia elected to cease her inquiry and allow BEK's attorney to pursue the matter.
Ms. Spann testified that in June 1999, when she sent Dr. Ballard copies of job descriptions for Harvey, Dr. Ballard called her and told her that he was throwing the descriptions away because he had not seen Mr. Harvey in two years.

8/5/99 Surgery Recommendation
According to Garcia, at an uncertain point in 1999, Ms. Garcia and Crawford's attorney reviewed Harvey's file and decided that, due to the confusion with the records, Harvey should again see Dr. Ballard. Dr. Ballard saw the claimant on August 5, 1999. In his report, the doctor said, inter alia:
I have not seen this man in a tremendously long time. There has been a lot of correspondence about him regarding his condition. The last time I saw him which was 1995, I felt that he likely had a meniscus tear of the right knee and needed (sic) and arthroscopy.
The doctor repeated his recommendation for arthroscopic surgery to determine the extent of any interarticular pathology "and hopefully improve this." On August 17, 1999, Dr. Ballard's office assistant faxed a copy of this report to Spann, who testified that she in turn notified Judy Garcia.
On August 19, 1999, Harvey's counsel filed a "Rule for Surgery" in the compensation proceedings. The rule stated that Harvey's doctor requested the surgery several weeks ago but the defendant denied the surgery. The pleading did not refer to the 1997 recommendation for surgery. The Office of Workers' Compensation (OWC) set the matter for hearing on August 30, 1999. On August 26, defendant obtained a continuance of the hearing and an order from the OWC directing Harvey to see a second orthopedist for another medical opinion. On September 13, 1999, Spann scheduled Harvey to see another surgeon, Dr. Liles, on September 28, but for personal reasons Harvey rescheduled this appointment for October 6, 1999.
On October 6, 1999, Dr. Liles examined Harvey. After the examination, the doctor and Harvey met with Spann. At this meeting, Dr. Liles explained to Harvey and Spann that Harvey needed arthroscopic surgery on both knees, not just the right knee. As a vocational consultant, Spann was not responsible for the decision to authorize the surgery, but she *953 testified that she notified Garcia of the doctor's recommendation the next day by telephone. Garcia testified that because of frequent discrepancies between verbal recommendations and final reports, she decided to get Dr. Liles' written report before proceeding.
Harvey testified that, on a date he could not remember, but within three months of his visit to Dr. Ballard, the pain in his knee became so bad that he once visited the emergency room at Lincoln General Hospital and got a shot of medicine for pain relief. On October 25, 1999, Mr. Harvey filed a second Rule for Surgery against BEK, demanding penalties and attorney fees in addition to payment for the surgery.
Spann said that she received a copy of Dr. Liles' written report on October 25, 1999 and that same day faxed the report to Garcia who approved the surgery on October 28, 1999. Dr. Ballard performed the arthroscopy on November 10, 1999.
The OWC held a hearing on November 15, 1999, and because Harvey asserted a claim for the 1997 recommendation for surgery, the workers' compensation judge (WCJ) ordered Harvey to amend his rule for surgery to include a reference to that recommendation. Harvey complied with this order.
On January 10, 2000, the OWC held a hearing on the question of whether BEK owed Harvey penalties and attorney fees for both the 1997 and 1999 recommendations for surgery. The judge decided that BEK had to pay two sets of penalties and attorney fees, one for each recommendation. The judge assessed the company with a $2,000 penalty and $6,000 in attorney fees for its handling of the 1997 recommendation for surgery and a $2,000 penalty and $10,000 in attorney fees for its handling of the 1999 recommendation for surgery. BEK now appeals from the judgment imposing those awards.

DISCUSSION
Generally, the law in effect at the time of the injury controls worker's compensation disputes. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). However, in Gay v. Georgia Pacific Corp., 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101, this court considered La. R.S. 23:1201(E) and (F) and held that the provisions of that statute in effect at the time of the withholding of benefits control the award of penalties and attorney fees. Because in this case, as in Gay, the penalties and fees are sought for the employer's alleged failure to provide benefits, we examine the question in light of the law in effect at the time of the alleged failure.
La. R.S. 23:1201 provides[1], in part:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be *954 paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.
As noted above, in this court's 1998 decision in this case we affirmed an OWC award of penalties and attorney fees for the company's failure to timely provide medical benefits shortly after Mr. Harvey was injured. Mr. Harvey has now made two additional claims for penalties and attorney fees for the alleged failure to timely provide medical benefits. The statute, as it read at the time of Mr. Harvey's accident, has been interpreted to allow only one claim for such penalties and attorney fees. See LeJeune v. Trend Services, Inc., 96-550 (La.App. 3d Cir.6/4/97), 699 So.2d 95, 100-101 (on original hearing). However, because we are applying the current version of the statute, we must decide whether this version allows for multiple penalties.
Workers' compensation statutes are generally construed liberally to implement the benefits of the law and to effect coverage, but the statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Turner v. Sunbelt Mfg., 32,691 (La.App.2d Cir.6/14/00), 763 So.2d 770.
The statute allows an award of penalties and fees for "each disputed claim" provided that the penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The word "claim" is not defined in La. R.S. 23:1021. In Ross v. Highlands Ins. Co., 590 So.2d 1177 (La.1991), in deciding whether the OWC or the district court had jurisdiction over an action to enforce a judgment, the court observed:
The term "claim" is nowhere defined in the Worker's Compensation Act. Nonetheless, it is clear from the context of provisions using the term that the underlying claim for relief is what is meant, not the enforcement of a judgment. A claim is initiated by the filing of a petition with the OWC once an issue surfaces which the parties cannot themselves resolve. La. R.S. 23:1310; H. Johnson, 14 Louisiana Civil Law Treatise Worker's Compensation, Sec. 381.10 (West 1991). An action for enforcement of a judgment is not the same thing as an action on an underlying claim, nor is it a "new claim."
If "claim" refers to the underlying demand for compensation benefits and not to a demand for a particular benefit, then a worker would be limited to a single penalty and attorney fee against an employer regardless of the employer's repeated arbitrary and capricious failure to pay benefits.
Although the term "claim" may generally refer to the underlying claim for workers' compensation, we believe that in this section the term has a more specialized meaning. The underlying reason for the workers' compensation provisions allowing the imposition of penalties and attorney fees for the arbitrary and capricious withholding of benefits is to combat the indifference by employers and insurers toward injured employees. Ward v. Phoenix Operating Company, 31,656 (La.App.2d Cir.2/24/99), 729 So.2d 109. In Gay, supra, this court decided that the triggering *955 event for penalties and attorney fees is not the injury giving rise to the compensation claim, but instead is the employer's or insurer's failure to comply with the procedures set forth in La. R.S. 23:1201. Interpretation of "claim" as a specific demand for particular benefits (such as an operation) rather than as a general demand for benefits under the compensation laws is consistent with the Gay rationale. As in Gay, "to conclude otherwise would dilute the deterrent effect of these statutory provisions, which are not intended to make the worker `whole' but rather to discourage specific conduct on the part of the employer." As the dissent in LeJeune, supra, states:
The most serious problem with [this rationale] is that once an employer/insurance company has committed enough violations to exhaust the $2,000.00 penalty limit, regarding either compensation or medical benefits, as in the instant case, the employee, for as long as he or she lives, has no protection against future infractions of arbitrary and capricious behavior.
We agree. Having decided that more than one penalty and attorney's fee is appropriate under the facts of this case, we now examine the propriety of the penalties assessed and the attorney's fees awarded.
The Worker's Compensation Judge (WCJ) has great discretion in finding that penalties are due. This discretion will not be overturned unless clearly wrong. Harvey v. B E & K Construction, supra, 716 So.2d at 519. With respect to Dr. Ballard's 1997 recommendation for surgery, the WCJ's finding that BEK failed to timely act is not clearly wrong. Although this is a very unusual case where the same doctor apparently had two patients with identical names and similar problems, BEK's representatives knew of the confusion and the 1997 surgery recommendation no later than December 1998. BEK and its representatives failed to take adequate steps to clarify the issue of whether Harvey had received the recommended treatment. The $2000 penalty is not an abuse of discretion.
In Ward, supra, as well as in Harvey II, this court held that an award of attorney's fees, while subject to the manifest error standard of review, must nevertheless be reasonable. La. R.S. 23:1201(F). Factors to be considered in imposing attorney's fees include the degree of skill and work involved, the amount of the claim, the amount recovered, and the amount of time devoted to the case. The award of attorney's fees is a type of penalty which is the imposition of the attorney's fee rather than the amount of the fee which must be assessed in accordance with law and be reasonable. Ward, supra at 113.
The award of $6,000 in attorney fees for representation of Harvey for the 1997 recommendation for surgery is unjustified by the record. Like Ward and Harvey II, the matters argued to the WCJ were not unusually complex. Further, there is essentially no evidence concerning any active representation of Harvey on the 1997 recommendation until the amended rule for surgery filed in 1999. There is no showing that Harvey's counsel had endeavored to no avail for two years in an effort to have BEK approve the knee surgery. We believe that an award of $3,000 is a reasonable award under the circumstances of this case. Therefore, the attorney fee award is reduced and that part of the judgment will be amended to reflect an award of attorney fees in the amount of $3,000.00.
With regard to BEK's untimely failure to approve the 1999 recommendation for surgery, we agree with the WCJ that BEK did not timely approve the request. However, we calculate that Mr. Harvey is entitled to a penalty award of $200, not $2,000. Medical benefits shall be paid within 60 days after the employer or insurer receives written notice thereof. La. R.S. 23:1201(F). The statute provides the employer up to 60 days to seek further information via investigation, second opinion or other means about the medical *956 treatment sought. Unless the employer has grounds to reasonably controvert the claim, the employer is liable for penalties in the amount of 12% of any unpaid medical benefits or $50 per calendar day along with reasonable attorney's fees unless the medical treatment denied is reasonably controverted. The fifty dollar per day penalty cannot exceed $2000. La. R.S. 23:1201(F).
BEK, through Crawford personnel, received written progress notes containing the 1999 recommendation on August 17, 1999. Surgery was approved on October 28, 1999. Excluding September 29 through October 6, the period of delay due to Mr. Harvey's rescheduling of the second opinion, 64 calendar days elapsed between notification and approval. The 4-day overage results in a penalty of $50 per day. See La. R.S. 23:1201(F) and compare the award in Ward, supra. Accordingly, the penalty award will be amended from $2,000 to $200.
As with the attorney fee award for the 1997 recommendation, we believe that the $10,000 award of fees for the 1999 recommendation is unreasonable; $5,000 is more appropriate, and the award will be so amended. Mr. Harvey did not file an answer to this appeal, and as we reduce the awards in his favor, we do not find that his attorney is entitled to additional fees on appeal.

DECREE
For the reasons expressed, we amend the judgment of the trial court to award Mr. Harvey $2,200 in statutory penalties and $8,000 in attorney fees. Costs of this proceeding are assessed to BEK.
AFFIRMED AS AMENDED.

APPLICATION FOR REHEARING
Before NORRIS, BROWN, GASKINS, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] But for the substitution of "workers' compensation judge" for "hearing officer" in the second sentence of paragraph F(1), this statute has not been amended since 1995.