793 So.2d 508 (2001)
John MITCHELL, Plaintiff-Appellant,
v.
BROWN BUILDERS, INC., Travelers Property Casualty, Defendants-Appellants.
No. 35,022-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*511 Mayer, Smith & Roberts by Walter O. Hunter, Jr., Alexandria, Counsel for Plaintiff-Appellant.
Petiette, Armand, Dunkelman, Woodley & Byrd, L.L.P. by Robert A. Dunkelman, Counsel for Defendants-Appellants.
Before GASKINS, PEATROSS, KOSTELKA, JJ.
GASKINS, Judge.
The defendants, Brown Builders, Inc. (Brown) and its insurer, Travelers Property Casualty (Travelers), appeal from a decision by a workers' compensation judge (WCJ) finding that the plaintiff, John Mitchell, suffered neck as well as back injuries in a work-related accident. The defendants object to the WCJ's award of temporary total disability benefits, supplemental earning benefits, medical expenses, and penalties and attorney fees. The plaintiff answered the appeal, seeking additional penalties, attorney fees, and legal interest on the judgment. For the following reasons, we affirm in part, reverse in part, and amend in part the decision of the WCJ. We also reject the plaintiff's claims on appeal.

FACTS
On July 7, 1998, the plaintiff was employed as a laborer with Brown. He was driving stakes with a sledgehammer when he felt a sudden sharp pain in his lower back. After reporting the incident to his supervisor and to a coworker, the plaintiff continued to work at another task for the rest of the day.
As a result of this incident, the next day the plaintiff sought medical treatment from his primary care physician, Dr. Larry Flake. The plaintiff reported that he was experiencing pain in his lower back. The plaintiff contends that he told Dr. Flake that he was injured at work, but he did not claim this as a work-related injury for insurance purposes. He also asserts that he complained to Dr. Flake that his neck and shoulders felt stiff, tired and heavy. *512 He denies that he had neck pain at that point.
The plaintiff was eventually referred to Dr. A.E. Dean, Jr., an orthopedic surgeon. Dr. Dean saw the plaintiff on July 27, 1998 regarding complaints of back pain. The plaintiff gave a history of having been injured on the job. The plaintiff initially made some complaint that his neck was stiff at times. However, his main complaint was low back pain and leg pain. Dr. Dean diagnosed the plaintiff as having acute lumbar strain with a degenerative disc at the L5-S1 level. He also had a bulging disc and spinal stenosis at L4-L5. An MRI confirmed this diagnosis. Electrodiagnostic examinations and nerve conduction studies performed by Dr. David N. Adams on the plaintiff's left lower extremity and related paraspinal muscles yielded normal results.
Because of continued complaints of low back pain and numbness in his arms and legs, Dr. Dean referred the plaintiff to Dr. Anil Nanda, a neurosurgeon. A letter from Dr. Nanda to Dr. Dean reflects that the plaintiff complained of low back pain radiating down his leg. There is no mention of neck pain. The examination showed that all of the plaintiff's cranial nerves were normal, that he had good motor strength in the upper and lower extremities and had normal reflexes.
Dr. Dean did not find that the plaintiffs back condition required surgery. The plaintiff was given medication and a course of physical therapy. On November 4, 1998, Dr. Dean's examination showed that the plaintiff was not experiencing any severe radiating pain and he had good flexion and extension. Dr. Dean deemed this to be a near normal examination. In late 1998, he released the plaintiff to return to his full duties at Brown.
The plaintiff contended that while he was receiving treatment for his back, he tried to get a loan to help with his expenses. When contacted on the loan application, Brown did not acknowledge that the plaintiff was employed with the company. At that point, the plaintiff assumed that he had been terminated. He applied for and received unemployment compensation benefits from November 15, 1998 to May 15, 1999. At some point, the plaintiff began paying his health insurance premiums that had previously been paid by Brown.
On March 11, 1999, approximately eight months after the work-related injury, the plaintiff consulted Dr. John T. Knight complaining of numbness and heaviness in both arms. The plaintiff claimed that he had suffered a work-related accident and injury, but did not initially have neck pain. The plaintiff was referred to Dr. Benjamin Nguyen for an MRI and electrodiagnostic testing. The MRI revealed a large herniated central disc with severe stenosis and spinal cord compression at the C3 C4 level in the plaintiffs neck. The plaintiff was referred to Dr. Jorge Martinez, a neurosurgeon, who recommended immediate surgery. The plaintiff took some time to contemplate the surgery, but eventually agreed to undergo the operation. Surgery was performed in May 1999.
By November 15, 1999, Dr. Martinez determined that the plaintiff had achieved maximum medical improvement. On December 10, 1999, Dr. Martinez again saw the plaintiff and determined that he had an excellent fusion at the C3-C4 level.
On September 15, 1998, the plaintiff filed a disputed claim for compensation, asserting only that the alleged work-related accident resulted in pain in his lower back. No complaint regarding neck pain was alleged. On June 1, 1999, the plaintiff asked for a delay in the trial of this matter due to the neck surgery, which he *513 claimed was caused by this work-related accident.
Brown filed an amended answer, claiming that, in response to interrogatories, the plaintiff failed to disclose that he had engaged in any employment or self-employment since July 7, 1998. According to Brown, the plaintiff owned and operated a snow cone stand. He had not stated in any of his pleadings or answers to interrogatories that he was working at this enterprise. Brown claimed that the plaintiff made a false statement or representation by withholding this information. Brown contended that the misrepresentation was made in order to receive workers' compensation benefits. The company argued that such action forfeited the plaintiff's right to receive compensation, citing La. R.S. 23:1208.
Trial on the matter was held on July 13, 2000. The plaintiff testified, outlining his claims of a work-related injury. He claimed that at first, he only felt pain in his lower back and legs. It was later determined that he had a herniated disc in his neck which required immediate surgery. After the surgery, the plaintiff did not continue to go to his various physicians because he was out of money and had outstanding bills with the doctors. He claimed that his neck is still painful and he has some numbness under his chin. He also claimed to have pain in his right leg where bone was extracted for his cervical fusion. However, the plaintiff testified that he has not had any low back pain since the surgery. After neck surgery, the plaintiff terminated his unemployment benefits, due to his inability to work.
The plaintiff testified that he built a snow cone stand in 1997, prior to his accident. He claimed that since the accident and injury, he donated the stand to his mother by notarial act. The plaintiff did not produce this document in corroboration of his claim. He claimed that two employees run the snow cone stand, earning minimum wage. He stated that he does not own the stand and does not regularly work there for wages. He testified that he does go by on occasion and sometimes waits on customers.
Brown presented the testimony of David D. Green, a private investigator. Mr. Green stated that he went to the snow cone stand on May 8, 2000, and made a purchase from Mr. Mitchell. He stated that Mr. Mitchell told him that he owned the stand. In response to this, the defendant testified that, "I probably said I did to make myself look good or big or whatever." According to Mr. Green, the plaintiff was at the stand alone. No other employees were present. Mr. Green also stated that he went by the stand the day before trial and observed the plaintiff standing outside, wearing an apron.
To disprove a causal connection between the plaintiffs work-related accident and his neck condition, Brown presented the depositions of Dr. Dean. Dr. Dean was questioned about the plaintiffs subsequent diagnosis of a herniated disc in his neck. He stated that while he was treating the plaintiff for low back pain, he never saw anything to indicate a herniated disc in the neck. The plaintiff exhibited no pain down his arms, usually associated with a cervical disc herniation, pinched nerve, or anything to that effect. According to Dr. Dean, a patient who had a large central disc herniation that was severely compressing the spinal cord and causing severe spinal stenosis, would be in a lot of pain. He stated that when he saw the plaintiff, his complaints regarding his neck were very limited. Dr. Dean concluded that there was no connection between the plaintiffs job-related accident and the herniated disc in his neck.
*514 On August 28, 2000, the WCJ filed reasons for judgment. The WCJ found that there was a work-related accident on July 7, 1998, and that the plaintiff's back and neck injuries were causally related to the accident. The WCJ found that the plaintiff had two prior back injuries, one in 1990 and another in 1996, but there was no prior showing of a herniated disc in his neck. After the present work-related accident, the plaintiff complained of low back pain and also, on July 27, 1998, complained about his neck and shoulders.
The WCJ found that Mr. Mitchell complained to Dr. Flake and Dr. Dean about stiffness in his neck shortly after the accident and noted, erroneously, that Dr. Martinez opined in his medical report that the neck injury was caused by the work accident. The WCJ also observed that the plaintiff's back pain improved after the neck surgery and there was no evidence of any other intervening accident or incidents after the work accident complained of here.
According to the WCJ, the plaintiff was entitled to temporary total disability benefits from July 7, 1998 to November 14, 1998 and from May 16, 1999 to May 7, 2000, at the rate of $329.44 per week. The plaintiff was not entitled to workers' compensation benefits during the time he was receiving unemployment benefits.
The WCJ found that, after May 8, 2000, the plaintiff was capable of performing light duty work. However, the defendants did not prove that the plaintiff was capable of earning 90% of his pre-injury wages due to his disability. Therefore, the plaintiff was awarded supplemental earnings benefits in the amount of $329.44 per week, beginning May 8, 2000 and continuing, in accordance with La. R.S. 23:1221(3).
The WCJ found that the defendants did not prove that the plaintiff was earning wages at the snow cone stand and therefore, there was no violation of La. R.S. 23:1208. However, because Mr. Mitchell was occasionally present at the stand and attended customers, the WCJ concluded that he was able to perform light duty work.
The WCJ found that the plaintiff was also entitled to recover all medical expenses connected with the neck and back injuries arising from the work-related accident. The WCJ found that the neck injury was reasonably controverted, but the back injury was not. Consequently, Brown was ordered to pay a penalty of $2,000.00 and attorney fees of $2,000.00. A judgment to this effect was filed August 28, 2000. The defendants appealed and the plaintiff answered the appeal.

LEGAL PRINCIPLES
Workers' compensation benefits are available for claimants who suffer personal injury by accident arising out of and in the course of employment. La. R.S. 23:1031(A). The employee has the burden of proving by a preponderance of the evidence that the disability is related to an on-the-job injury. Anthony v. BE & K Construction, 32,729 (La.App.2d Cir.5/10/00), 760 So.2d 608, writ denied, XXXX-XXXX (La.9/15/00), 768 So.2d 1280. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover, it must be determined that his employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. Shelton v. Wall, (La.App. 2d Cir.1993), 614 So.2d 828; Durham v. Plum Creek Manufacturing, 32,888 (La.App.2d Cir.5/10/00), 760 So.2d 564.
An employee's pre-existing condition does not disqualify his claim if the *515 work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. When the claimant proves that he had no disabling symptoms before the accident, but that commencing with the accident, the disabling symptoms appeared, and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition, a claimant's work injury is presumed to have aggravated a pre-existing infirmity to produce his disability. Thompson v. Dillard's Department Store, 32,974 (La.App.2d Cir.4/10/00), 759 So.2d 1074.
It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Therefore, the appellate standard of review applicable to the findings of a WCJ is the manifest error-clearly wrong test. Shelton v. Wall, supra.
Where objective evidence so contradicts an employee's testimony, or the testimony is so internally inconsistent or implausible on its face that a reasonable fact finder would discredit the story, a reviewing court may well find manifest error or clear wrongness even in a credibility determination. Sisk v. Martin Specialty Coatings, 28,592 (La.App.2d Cir.8/21/96), 679 So.2d 569, writ denied, 96-2328 (La.11/22/96), 683 So.2d 281. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991).
The issue of disability within the framework of the workers' compensation law is not solely a medical determination. The totality of the evidence, lay and medical, resolves the issue. The fact finder is free to accept or reject the opinion of a physician or medical expert depending upon that expert's qualifications, credibility and testimony. Anthony v. BE & K Construction, supra.

RELATION OF NECK SURGERY TO WORK-RELATED ACCIDENT
Brown and Travelers do not dispute that the plaintiff suffered a work-related accident on July 7, 1998, which resulted in an injury to his back. They state in their brief that they have paid all benefits associated with the low back injury, i.e., temporary total disability benefits from July 7, 1998 until November 14, 1998, as well as penalties and attorney fees. No mention was made as to whether the defendants paid the medical expenses for treatment of the plaintiff's back injury. However, the defendants argue on appeal that the plaintiff failed to prove that the herniated disc in his neck was caused by the work accident. They contend that the WCJ erred in finding a casual connection between the work accident and the neck injury and erred in awarding workers' compensation benefits and medical expenses resulting therefrom. This argument has merit.
The defendants argue that the plaintiffs initial complaints were largely of low back pain. Although he did make some complaint to Dr. Flake and to Dr. *516 Dean about stiffness in his neck, he did not complain of pain and he did not continue to complain of neck discomfort, as he did his low back pain. The defendants point out that Dr. Flake's examination failed to reveal any abnormality with the plaintiffs neck. Further, in order to receive unemployment compensation benefits, the plaintiff had to declare himself ready, willing, and able to work. He did so on November 15, 1998. This was approximately the same time that Dr. Dean released the plaintiff to return to work with no restrictions.
The defendants assert that Dr. Dean, who testified by deposition in this matter, stated that the herniated disc was not present when he treated the plaintiff and was not caused by the work-related injury. Dr. Dean's medical testing did not reveal any neck abnormalities. According to Dr. Dean, if the herniated disc in the plaintiffs neck had been compressing the spinal cord at the time the study was done, some abnormalities would have been revealed.
The defendants argue that Dr. Nanda, a neurosurgeon, noted no upper extremity abnormalities. They also point out that Drs. Flake, Dean, and Nanda were all physicians of the plaintiff's choice. None found a neck injury and Dr. Dean specifically stated in his deposition that the neck problem was not present while he was treating the plaintiff.
In arguing that the plaintiff failed to show that his neck surgery was necessitated by his work accident, Brown contends that the trial court improperly considered the conclusions of two of the plaintiffs doctors. The defendants contend that the WCJ erroneously allowed two "To Whom it May Concern" letters by Dr. Knight and Dr. Martinez to be included in the record as a whole, despite the defendants' hearsay objections. These letters were filed into the record in conjunction with the plaintiff's motion for a continuance of the proceedings necessitated by his neck surgery. Both letters make conclusory statements that the neck injury was caused by the work accident.
We find that the WCJ properly denied the defendants' hearsay objection to the letters. According to the Louisiana Supreme Court, to give effect to the more relaxed evidentiary standard in La. R.S. 23:1317, the WCJ has the discretion to admit hearsay evidence in workers' compensation proceedings. Such evidence can qualify as "competent evidence," provided that the evidence has some degree of reliability and trustworthiness and is the type that reasonable persons would rely upon. This determination is to be made on a case-by-case basis under the particular facts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard. Chaisson v. Cajun Bag & Supply Company, 97-1225 (La.3/4/98), 708 So.2d 375. See also Odom v. International Paper Company, 31,826 (La.App.2d Cir.5/5/99), 736 So.2d 290. Accordingly, we find that the WCJ did not err in allowing the letters to be filed into the record and in considering them in forming its opinion.
However, we find that the conclusions expressed in the letters were not sufficient for the WCJ to determine that the neck surgery was work-related. The letter by Dr. Martinez reflects that the plaintiff had been experiencing neck and back pains since the work accident. He opined that the cervical condition was a work-related injury. Dr. Knight's letter states that the plaintiff had bilateral median neuropathy which, in his opinion, was work-related. The letters do not provide a medical or factual basis for the conclusions reached.
*517 The records of Dr. Martinez and Dr. Knight note the herniated disc in the plaintiffs neck and the need for surgery as well as the plaintiffs description of his work-related accident. Dr. Martinez's records show that when he initially saw the plaintiff in March 1999, the plaintiff stated that he had been having neck pain and numbness in his arms for the past three to four months. This onset of pain was several months after the accident on the job. There is no conclusion in the records that the plaintiffs neck injury, which developed approximately eight months after the accident at issue here, was caused by the work accident.
In contrast, Dr. Dean gave two extensive depositions which were admitted into evidence. He stated that a large central disc herniation that was severely compressing the spinal cord and causing severe spinal stenosis would be painful. During five months of treatment, the plaintiff made very minor complaints of stiffness in his neck. These complaints were not consistent with the degree of pain that would have accompanied a herniated cervical disc. Dr. Dean concluded that the herniated disc in the plaintiffs neck was not present while he treated him and was not related to the work accident.
Dr. Dean's conclusion that the herniated disc would have caused significant pain if it had been present immediately or soon after the injury was not rebutted by the plaintiff. The conclusory statements in the letters of Dr. Martinez and Dr. Knight constituted the only evidence presented by the plaintiff of a connection between the work accident and his herniated cervical disc. This is simply insufficient to carry the plaintiff's burden of proving that the neck injury was work-related. The WCJ erred in concluding otherwise. Accordingly, we reverse that portion of the judgment awarding the plaintiff workers' compensation benefits and medical expenses related to his neck.

VIOLATION OF LA. R.S. 23:1208
The defendants argue that the WCJ erred in finding that the plaintiff did not forfeit his benefits under La. R.S. 23:1208 by failing to reveal that he was working at the snow cone stand. The defendants also contend that the plaintiff erroneously stated that he had no prior problems with his neck. The defendants assert that, because the plaintiff failed to reveal these facts, he has forfeited his right to workers' compensation benefits. These arguments are without merit.
La. R.S. 23:1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation....
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter....
Under the statute, the requirements for forfeiture of benefits are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefits or payment. Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7. All these requirements must be present before a claimant can be penalized. Harris v. Bancroft Bag, Inc., 30,431 (La.App.2d Cir.4/9/98), 714 So.2d 44. Because this statute is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions. Smalley v. Integrity, Inc., 31,247 (La.App.2d *518 Cir.12/9/98), 722 So.2d 332, writ denied, 99-0072 (La.3/19/99), 739 So.2d 782.
The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Clearly, an inadvertent or inconsequential false statement will not result in the forfeiture of benefits. Bass v. Allen Cannery Company, Inc., 30,635 (La.App.2d Cir.6/26/98), 715 So.2d 142, writ denied, 98-2069 (La.11/6/98), 728 So.2d 395.
Brown contends that, in interrogatories propounded to the plaintiff, he was asked if he engaged in any employment or self-employment since the accident. He responded that he had not. On March 3, 2000, the plaintiff was asked to supplement his response in this regard and he failed to do so. The defendants argue that the plaintiffs trial testimony that he did not receive wages for working at the stand and that he donated it to his mother were uncorroborated and self-serving.
We find that the WCJ did not err in finding that the defendants failed to prove that the plaintiff was working regularly at the snow cone stand for wages or that he owned the business. The evidence shows that the plaintiff waited on customers and was seen at the stand on more than one occasion. However, as found by the WCJ, there is no showing that the plaintiff was gaining any economic benefit from the business.
As to his prior complaints of neck pain, the record shows that in 1990, these were made in connection with a low back injury. Even though the plaintiff testified that he did not have any prior neck injuries, the WCJ had discretion to find this omission to be more in the nature of an inadvertent or inconsequential statement which, under the circumstances present here, will not result in the forfeiture of benefits. Accordingly, we affirm that portion of the WCJ's ruling finding that a forfeiture of benefits under La. R.S. 23:1208 was not warranted.

PENALTIES
In his answer to the appeal, the plaintiff contends that the WCJ erred in assessing only a penalty of $2,000.00. He argues that the defendant failed to pay not only workers' compensation benefits, but also failed to pay medical expenses. He argues that under La. R.S. 23:1201, a penalty may be assessed for each disputed claim. Because there was no dispute that a work-related accident occurred, the plaintiff contends that a $2,000.00 penalty should be assessed for both categories, with a total penalty of $4,000.00.
La. R.S. 23:1201 provides in pertinent part:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; ...
B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.
C. Installment benefits payable pursuant to R.S. 23:1221(3) shall become due on the fourteenth day after the employer or insurer has knowledge of the compensable supplemental earnings benefits on which date all such compensation then due shall be paid....
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.

*519 F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim....
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from condition over which the employer or insurer had no control....
The underlying reason for allowing the imposition of penalties and attorney fees for the withholding of workers' compensation benefits is to combat indifference by employers and insurers toward injured employees. Ward v. Phoenix Operating Company, 31,656 (La.App.2d Cir.2/24/99), 729 So.2d 109. In Harvey v. BE&K Construction, 34,057 (La.App.2d Cir.11/15/00), 772 So.2d 949, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 732, this court discussed the definition of "claim" under La. R.S. 23:1201 and interpreted it to mean a specific demand for particular benefits rather than a general demand for benefits under the compensation laws. We stated that to conclude otherwise would dilute the deterrent effect of these statutory provisions which are not intended to make the worker "whole" but rather to discourage specific conduct on the part of the employer. Under this rationale, this court concluded that more than one penalty may be appropriate in a case if more than one claim has been denied. See also LeJeune v. Trend Services, 96-550 (La.App. 3d Cir.6/4/97), 699 So.2d 95; Dubois v. Louisiana Forest Industries, Inc., 98-895 (La.App. 3d Cir.12/9/98), 722 So.2d 409, writ denied, 99-0049 (La.2/26/99), 738 So.2d 586.
The WCJ is given great discretion in finding that penalties are due. This discretion will not be overturned unless it is clearly wrong. Ward v. Phoenix Operating Company, supra. As stated above, we find in this case that the plaintiff has shown only that his back injury was caused by his work-related accident. The defendants do not object to this finding and assert that they have paid temporary total disability benefits connected with the back injury as well as penalties and attorney fees. The WCJ specifically stated that the penalty was awarded for nonpayment of benefits connected with the plaintiffs back injury. The WCJ obviously acted within her discretion in choosing not to award a separate $2,000.00 penalty for nonpayment of medical expenses for treatment of the plaintiffs back. We find that the WCJ did not abuse her discretion in assessing penalties in this case. The plaintiffs demand in this regard is denied.

ATTORNEY FEES
The plaintiff seeks an increase in attorney fees for work at the trial level and seeks additional attorney fees for work done on appeal. However, the plaintiff has failed to show that the attorney fee award was not reasonable. Accordingly, we reject these demands.
In the present case, the WCJ awarded the plaintiff $2,000.00 in attorney fees. Under La. R.S. 23:1201 F, cited above, reasonable attorney fees may be assessed for failure to pay workers' compensations claims. In determining what constitutes a reasonable fee in a case, there is no requirement that the trial court hear evidence concerning the time spent or the hourly rates charged to make an *520 award of attorney fees, since the record will reflect much of the services rendered. Factors to be considered in imposition of attorney fees in workers' compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Harvey v. BE&K Construction, 33,475 (La. App. 2 Cir. 8/23/00), 770 So.2d 819.
We affirm the $2,000.00 attorney fee award in this case, finding that it was reasonable. We do not find that the plaintiff is entitled to an increase nor is he entitled to additional attorney fees for work done on appeal.

LEGAL INTEREST
The plaintiff contends that the WCJ erred in failing to award legal interest on the benefits, penalties and attorney fees awarded. He urges that under La. R.S. 23:1201.3(A), legal interest is calculated from the date each compensation payment becomes due until paid. As to interest on penalties and attorney fees, it is awarded from the date of judgment until paid. This argument has merit.
La. R.S. 23:1201.3 provides in pertinent part:
.... Any compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest from the date compensation was due until the date of satisfaction. The interest rate shall be fixed at the rate in effect on the date the claim for benefits was filed with the office of workers' compensation administration.
In Gregory v. Interim Personnel of North Louisiana, 30,808 (La.App.2d Cir.8/25/98), 717 So.2d 291, we noted that La. R.S. 23:1201.3(A) provides that any compensation awarded "shall" bear judicial interest. Thus, an award of legal interest is not discretionary with the WCJ, since the interest attaches automatically until the judgment is satisfied, whether prayed for in the petition or mentioned in the judgment. Therefore, the silence of the WCJ's decision cannot be interpreted as rejection of an award of interest. However, this court went on to state that if a decision awarding compensation benefits is silent regarding legal interest, a claimant must seek modification of the judgment on appeal in order to amend the decision and enforce his right to obtain such interest. In the present case, the plaintiff is entitled to legal interest on the judgment and did properly appeal the omission of it in the judgment. Therefore, we amend the judgment to include the plaintiff's entitlement to legal interest on the judgment in his favor in accordance with La. R.S. 23:1201.3(A).

CONCLUSION
For the reasons stated above, we affirm the WCJ's decision finding that the plaintiff, John Mitchell, suffered a work-related back injury. We affirm that portion of the judgment ordering the defendants, Brown and Travelers, to pay temporary total disability benefits on behalf of the plaintiff from July 7, 1998 to November 14, 1998. We affirm the award of medical expenses connected with the plaintiffs lower back injury. We also affirm the award of $2,000.00 in penalties and $2,000.00 in attorney fees.
We reverse that portion of the WCJ's decision finding that the plaintiffs neck injury was work-related. We vacate that portion of the judgment ordering the defendants to pay temporary total disability benefits from May 16, 1999 to May 7, 2000 and supplemental earnings benefits beginning May 8, 2000. We also vacate the award of medical expenses connected with *521 the plaintiffs neck injury and surgery. We amend the judgment to allow legal interest on the judgment in accordance with law. Costs are assessed one-half to the plaintiff and one-half to the defendants.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, and RENDERED.